TRINA A. HIGGINS, United States Attorney (7349)
AMANDA A. BERNDT, Assistant United States Attorney (15370)
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Phone: (801) 524-5682
amanda.berndt@usdoj.gov

MATTHEW C. INDRISANO
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 514-1398
Fax: (202) 616-6584
matthew.indrisano@usdoj.gov

*Attorneys for Plaintiff United States of America*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EIDP, INC., f/k/a E.I. DU PONT DE NEMOURS AND COMPANY and CHEMOURS COMPANY FC, LLC,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 24-cv-722<br><br>Judge Choose Judge |

The United States of America, by authority of the Attorney General and acting at the request of the United States Environmental Protection Agency (EPA) alleges:

1

## NATURE OF ACTION

1. This is a civil action under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601 *et seq.* against Defendants EIDP INC., formerly known as E.I. du Pont de Nemours and Company, (DuPont) and Chemours Company FC, LLC (Chemours) in connection with response actions to address the release and threat of release of hazardous substances at operable unit 1 (OU1) of the Uintah Mining District Superfund Site in Park City, Utah (the Site).

2. The United States seeks, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), recovery of unreimbursed response costs incurred for activities undertaken in response to the release or threatened release of hazardous substances at the OU1. The United States also requests a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), declaring that the Defendants are liable for any future response costs that the United States may incur in connection with any subsequent action or actions that may be performed pertaining to the OU1.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action, and the parties hereto, pursuant to Section 107(a), 113(b) and 113(e) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(b) and (e), and 28 U.S.C. §§ 1331 and 1345.

4. Venue is proper in this district pursuant to Section 107(a), 113(b) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(b), and 28 U.S.C. §§ 1391(b) and (c), because the claims arose and the threatened and actual releases of hazardous substances occurred in this district.

**DEFENDANTS**

5. DuPont is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware. DuPont is authorized to do business in Utah.

6. DuPont is the successor through a series of mergers and reorganizations to the Grasselli Chemical Company of Ohio (Grasselli Ohio), the Grasselli Chemical Company (Grasselli Utah), and the Rokeby Realty Company (Rokeby).

7. DuPont and its predecessors operated milling operations or owned property where milling operations disposed of tailings and mine wastes in and around OU1 of the Site.

8. Chemours is a Delaware corporation with its principal place of business located at 1007 Market Street, Wilmington, Delaware. Chemours is authorized to do business in Utah.

9. DuPont formed Chemours in 2015 through a spinoff of its performance chemicals division. As part of the spinoff, Chemours expressly assumed certain environmental liabilities, including those for DuPont and its predecessors at OU1. For purposes of this Complaint, any reference to Defendants shall include Chemours, DuPont, and any of their predecessor companies identified above.

**STATUTORY BACKGROUND**

10. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a) and 9601(25).

11. Section 107(a) of CERCLA provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject
> only to the defenses set forth in subsection (b) of this Section —

> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> * * *
>
> shall be liable for —
>
> > (A) all costs of removal or remedial action incurred by the United States Government or a State … not inconsistent with the national contingency plan . . .

42 U.S.C. § 9607(a).

12. Section 113(g)(2) of CERCLA specifies that in any action for recovery of costs under CERCLA Section 107, 42 U.S.C. § 9607, "the court shall enter a declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recovery further response costs . . . ." 42 U.S.C. § 9613(g)(2).

## GENERAL ALLEGATIONS

### The Site

13. EPA organized the Site into two operable units. This lawsuit focuses on OU1, which includes Treasure Mountain Junior High School and its recreation fields.

14. The northern portion of a former tailings impoundment, historically known as the "Grasselli Dump" because the impoundment was owned by Defendants for approximately 40 years, lies underneath the junior high school. Prospector Park, a residential development built in the mid to late 1970s, was built overtop the other portions of the Grasselli Dump.

15. The second operable unit includes several areas contaminated by historic mining operations in the mountains south of Park City. In 2015, EPA entered an administrative order on consent with United Park City Mines to perform work at these areas. That work is not the subject of this Complaint.

4

### Historic Mining Activities in the Park City District

16. Silver was discovered in the Park City area in 1872, and, for the next century, numerous mining companies mined silver, gold, zinc, and lead in the area.

17. Mining companies shipped high quality ore directly to Salt Lake City and elsewhere.

18. Milling companies crushed lower grade ore in concentrator mills further separating marketable from less marketable ore.

19. The extraction of ore through the milling process had its limits. And, even after milling, large quantities of metals such as lead, zinc, cadmium, and arsenic remained in spent ore and non-marketable wastes, which were known as tailings.

20. Various mining and milling companies sluiced fine-grained tailings and other mine waste into Silver Creek and its tributaries and transported downstream.

21. Deposits of heavy metals contained in the tailings and other mine wastes are located throughout the Silver Creek watershed where the gradient of Silver Creek levels off and stream velocity decreases.

### Defendants' Successor Liability

22. In 1907, Grasselli Ohio constructed a dry mill for processing tailings to extract zinc and other heavy metals for use at its refinery located in Cleveland, Ohio.

23. Two years after building its dry mill, Grasselli Ohio created Grasselli Utah, a subsidiary responsible for its operations in Park City area.

24. By 1910, Grasselli Utah's operations expanded to include a wet mill that allowed it to process even more tailings.

5

25. Grasselli Utah also purchased approximately 165 acres of land where tailings and other mine waste had come to rest.

26. The Grasselli property came to be known as the Grasselli Dump because of the large tailings impoundment that grew to be roughly 3,500 ft. long, 500-1,000 ft. wide, and an average of 2 ft. deep.

27. By the 1920s, Grasselli Ohio and Grasselli Utah owned 200 acres of land near OU1, including the real property under the majority of the Grasselli Dump.

28. After ceasing its milling operations, Grasselli Utah leased portions of its land to other companies that constructed an additional mill to process tailings.

29. In 1928, DuPont and Grasselli Ohio executed an Agreement of Reorganization.

30. First, Grasselli Ohio acquired all the assets of its subsidiaries, including Grasselli Utah.

31. Next, the shareholders of Grasselli Ohio received stock in DuPont. DuPont expressly assumed all Grasselli Ohio's liabilities.

32. Finally, Grasselli Ohio and its subsidiaries were dissolved.

33. As part of this reorganization, the Grasselli entities conveyed the real property held in Utah to Rokeby, a subsidiary of DuPont.

34. Until 1937, Rokeby owned the property underlying most of the Grasselli Dump and continued leasing it to other entities who processed tailings on that property.

35. In 1937, shortly before its dissolution, Rokeby conveyed its property along with all its other assets to DuPont.

36. DuPont owned the property underlying most of the Grasselli Dump until 1947.

37. DuPont continued leasing it to other entities for the purpose of prospecting, exploring, developing, mining, and milling mineral ores, which included the use of solvents and acids to extract residual silver from the tailings.

38. The property that makes up OU1 includes a portion of the property owned and operated by Defendants where tailings containing hazardous substances were stored.

39. Defendants owned the tailings located at the Grasselli Dump, which were not confined by property boundaries and extended further into what is now OU1.

40. Surface water and wind also transported small particles, grain size tailings, and other mine wastes containing heavy metals from the Grasselli Dump throughout OU1.

41. Samples collected at OU1 confirm hazardous substances including lead, zinc, cadmium, and arsenic, which are "hazardous substances" within the meaning of Sections 101(14) and 102 of the Act, 42 U.S.C. §§ 9601(14) and 9602.

42. Defendants are a past "owner" and/or "operator"—within the meaning of CERCLA Sections 101(20) and 107(a), §§ 9601(20) and 9607(a)—of part of the property that is now OU1, the milling operations, and/or the tailings located at the Grasselli Dump.

43. Hazardous substances contained in the tailings processed at Defendants' mills and located at the Grasselli Dump were released into OU1.

44. The Grasselli Dump was a "facility" within the meaning of CERCLA Section 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

45. There was a "release" and/or there is a "threat of release" of hazardous substances into the "environment" at and from OU1, within the meaning of Sections 101(8), 101(14), 101(22), and 104(e) of the Act, 42 U.S.C. §§ 9601(8), 9601(14), 9601(22), and 9604(e).

**Federal Response Actions at OU1**

46. EPA conducted a time-critical removal action in 2016 after discovering elevated levels of lead in soils at Treasure Mountain Junior High School.

47. As part of the time-critical removal action, EPA removed the top six inches of contaminated soils, backfilled with clean material, regraded, and reseeded the impacted area.

48. In January 2017, EPA and the Board of Education of Park City School District entered an administrative order on consent, in which the Board of Education agreed to install a sprinkler system, maintain the vegetation, and record an environmental covenant on the property making up OU1.

49. EPA issued a final pollution report for OU1 on April 2, 2018.

50. DuPont entered into an agreement with the United States to toll the statute of limitations on April 1, 2021. The tolling agreement expires on October 31, 2024.

51. Chemours entered into an agreement with the United States to toll the statute of limitations on March 30, 2021. The tolling agreement expires on October 31, 2024.

**FIRST CLAIM FOR RELIEF**
**(Cost Recovery by the United States under CERCLA Sections 107(a),**
**42 U.S.C. § 9607(a))**

52. Paragraphs 1– 514946 are realleged and incorporated herein by reference.

53. In response to the release or threatened release of hazardous substances at or from the Site, the United States has incurred response costs that have not been reimbursed. The United

States continues to incur response costs, including but not limited to the costs of this enforcement action.

54. The United States' activities related to the Site and the costs incurred incident to such actions are not inconsistent with the National Contingency Plan, 40 C.F.R Part 300, as promulgated under Section 105(a) of CERCLA, 42 U.S.C § 9605(a).

55. Pursuant to Section 107(a) of CERCLA, 42 U.S.C § 9607(a), the United States is entitled to recover interest on the response costs at the rate that is specified for interest on investments of the Hazardous Substances Superfund established under subchapter A of chapter 98 of title 26 of the United States code.

56. Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), the Defendants are liable for all unreimbursed response costs incurred by the Governments in connection with the Site.

## SECOND CLAIM FOR RELIEF
(Declaratory Judgment Under CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2))

57. Paragraphs 1– 51 are realleged and incorporated herein by reference.

58. The United States will continue to incur response costs associated with the Site, including oversight and enforcement costs that are recoverable as response costs under CERCLA.

59. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to entry of a declaratory judgment that the Defendants are liable for future response costs incurred by the United States in connection with the Site, to the extent that such costs are incurred in a manner not inconsistent with the National Contingency Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  Enter judgment in favor of the United States, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and against the Defendants for all unreimbursed past response costs incurred by the United States in connection with response activities involving the Site, including prejudgment interest;

2.  Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), enter a declaratory judgment in favor of the United States and against the Defendants that will be binding on any subsequent action or actions to recover further response costs or damages in connection with the Site;

3.  Award the United States its costs of this action; and

4.  Grant such other and further relief as the Court deems just and proper.

September 30, 2024

Respectfully submitted

FOR THE UNITED STATES OF AMERICA

TRINA A. HIGGINS
United States Attorney
District of Utah

/s/Amanda A. Berndt
AMANDA A. BERNDT
Assistant United States Attorney

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

/s/Matthew C. Indrisano
Matthew C. Indrisano
Trial Attorney
Environmental Enforcement Section

10

                                      Environment and Natural Resources Division
                                      U.S. Department of Justice
                                      P.O. Box 7611
                                      Washington, DC 20044-7611
                                      Phone: (202) 514-1398
                                      Fax: (202) 616-6584
                                      matthew.indrisano@usdoj.gov

OF COUNSEL:
AMELIA PIGGOTT
Enforcement Attorney
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, Colorado 80202